IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| GILBERT SWIFT, | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 3:9-CV-1011-TFM |
| MICHAEL J. ASTRUE, | ) | |
| | ) | |
|    Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Following administrative denial of his application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq*., and supplemental security income benefits under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq*., Gilbert Swift ("Swift") received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision.  When the Appeals Council rejected review the decision became the final decision of the Commissioner of Social Security ("Commissioner").  Judicial review proceeds pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and 28 U.S.C. § 636 (c), and for reasons herein explained,  the court AFFIRMS THE COMMISSIONER'S decision.

### I.  STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

1

42 U.S.C. § 423(d)(1)(A).[1]

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

    (1) Is the person presently unemployed?

    (2) Is the person's impairment(s) severe?

    (3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[2]

    (4) Is the person unable to perform his or her former occupation?

    (5) Is the person unable to perform any other work within the economy?

    An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004).  Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4.  At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform.  *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC).  *Id*. at 1238-39.  RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence.  *Id*.  It also can contain

---

[1] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[2] This subpart is also referred to as "the Listing of Impairments."

[3] Though a supplemental security income case (SSI), *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), applies the sequential process applicable to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases.  *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] (grids) or hear testimony from a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The Court's review of the Commissioner's decision is a limited one. "The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), quoting 42 U.S.C. §405(g). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote* at 1560, citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm if the court would have reached a contrary result as finder of fact, or if evidence preponderates against the Commissioner's findings. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

(11th Cir. 1991); *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560.

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## II.  ADMINISTRATIVE FINDINGS

Swift, age 46 at the time of the hearing, completed the twelfth grade. (R.29).  Swift has past relevant work as a mill operator (semi-skilled, medium); press operator (semi-skilled, medium); skid operator (semi-skilled, medium); crane operator (semi-skilled, medium); heavy duty mechanic (semi-skilled, heavy); and dishwasher (unskilled, medium). (R.23).  Swift has not engaged in substantial gainful work activity since his alleged disability onset date of March 8, 2003.  Swift claims he is unable to work because of chronic, moderately severe pain in his back, hips, legs and right foot. (R.34).  Swift claims his back pain is recurrent despite lumbar surgery. (R.35).  Swift rates his pain as level eight or nine on a ten point scale with ten being the highest level of pain. (R.35).

Medical records show Swift was treated by Dr. Brad Katz from October, 2003 to December, 2003 for lumbar degenerative disc disease. (R.203). Dr. Katz gave Swift a lumbar epidural steroid injection and almost two weeks later gave Swift a lumbar nerve root block.
Dr. Chanda Houts, a podiatrist, treated Swift from August, 2004 through January 2005.  Swift saw Dr. Houts because he had been in an automobile wreck in June, 2004.  Swift told Dr. Houts the emergency room physicians diagonosed his injuries as a broken heel. (R.217).  After

examination, Dr. Houts diagnosed Swift as having a right leg fracture and a sprain. (R.217). Dr. Houts applied a soft leg cast and told Swift to continue to use his crutches and to make a follow up appointment for a fiberglass cast. (R.217). Swift followed up as necessary and was recast on August 3, 2004, August 17, 2004, and September 1, 2004. (R.214-217). On October 19, 2004, Dr. Houts applied a walking cast and told Swift to return in two weeks. (R.211-212). On January 31, 2005, Dr. Houts wrote notes which reflect Swift wore regular tennis shoes for the visit and had minor pain in his heel (R.210).

On July 6, 2005, Dr. Kishore Chivukula performed a consultative neurological examination of Swift. Dr. Chivukula found minor abnormalities but did not find any disabling conditions.

On October 23, 2006, Swift was treated by Dr. Rosalina Aguilar for low back pain and herniated nucleus pulposus. (R.240-242). Dr. Aguilar prescribed Tylenol to treat Swift.

On December 11, 2006, Dr. James O. Colley performed a consultative physical examination of Swift. Dr. Colley found minor abnormalities but did not find Swift has any disabling conditions.

On December 28, 2006, Dr. Stuart X. Stephenson, a State Agency physician, completed a Physical Residual Functional Capacity Assessment of Swift. Stephenson opined that Swift could perform light work activity with certain limitations.

On January 29, 2007, Dr. Patrick Ryan treated Swift for lumbar radiculitis and to rule out impingement. (R. 246-249).

On November 13, 2008, Aleada Lee-Tarver, Ph.D., performed a consultative psychological examination of Swift. Dr. Tarver concluded Swift had moderate limitations in his ability to understand and remember simple instructions, carry out simple instructions, make

5

judgments on simple work-related decisions, interact appropriately with the public and interact appropriately with coworkers.  Dr. Lee-Tarver found Swift has marked limitations in the same areas with respect to complex matters.

### III.  ISSUES

Swift raises two issues for judicial review:

Whether the ALJ correctly applied the Eleventh Circuit pain standard;

Whether the ALJ had sufficient evidence to partially credit the opinion of Dr. Tarver.

### IV.  DISCUSSION

#### 1.  The ALJ correctly applied the Eleventh Circuit pain standard.

Swift argues the ALJ misapplied the Eleventh Circuit's pain standard to his testimony about subjective pain and limitations.  The Commissioner responds that the ALJ followed the correct steps to evaluate testimony of subjective pain and limitations, but simply did not find the testimony credible.

The five-step sequential analysis set forth in regulations require that a claimant prove that he is disabled.  20 C.F.R. § 404.1512; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  The Eleventh Circuit has set forth criteria to establish a disability based on testimony about pain and other symptoms.  It explained that

> a claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.  If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.  Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citations omitted).  A "claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself

sufficient to support a finding of disability." *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). "Indeed, in certain situations, pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). An ALJ must explicitly explain why he chose not to credit a claimant's testimony. *Brown*, 921 F.2d at 1236. When evaluating a claim based on disabling subjective symptoms, the ALJ considers medical findings, a claimant's statements, statements by the treating physician and evidence of how the pain affects the claimant's daily activities and ability to work. 20 C.F.R. § 416.929(a). "The decision concerning the plaintiff's credibility is a function solely within the control of the Commissioner and not the courts." *Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1213 (M.D. Ala. 2002).

Under *Wilson*, a claimant's subjective testimony can establish disability if it is sufficiently supported by medical evidence. *Brown* at 1236. An ALJ's credibility findings are an important factor in the application of the pain standard. *Wilson, id*. Here, the ALJ found Swift has medically determinable impairments which could reasonably be expected to cause the alleged symptoms, but did not find Swift credible enough to satisfy the pain standard. Medical evidence supports the ALJ in this respect. For instance, Dr. Chivukula noted Swift uses a cane but has no prescription for the cane. (R.220). Further, Swift exaggerated his symptoms to Dr. Chivukula. (R.220). Swift also told Dr. Chivukula he needed no assistance with activities of daily living. (R.220). Additionally, the medical evidence favors the conclusions of the ALJ because no treating or examining physician put limitations on Swift's physical activities that were inconsistent with the RFC.

Testimony from a claimant alone is not conclusive evidence of disability. *See Macia v. Bowen*, 829 F. 2d 1009, 1011 (11th Cir. 1987). Regulations at 20 C.F.R. § 404.1529(c)(4) permit

an ALJ to consider inconsistencies or conflicts between a claimant's statements and other evidence. *Osborn v. Barnhart*, 194 Fed. Appx. 654, 664-65 (11th Cir. 2006). During his consultative examination in December, 2006, Swift said he had disabling low back pain for as long as he could remember. (R.224-225). Despite this testimony of long-term pain, Swift was employed during the period which overlaps the period where he claimed to suffer disabling low back pain. (R.179).

The Court finds the record provides substantial evidence for the ALJ's credibility findings, and consequently, there is no error in the ALJ's determination that Swift's testimony does not establish disability.

### 2.  The ALJ had adequate reasons to reject the opinion of Dr. Tarver.

Swift alleges the ALJ reversibly erred when he rejected the opinion of Aleada Lee Tarver, Ph.D., the examining psychologist. Dr. Tarver found Swift had marked limitations in interacting with supervisors, dealing with changes in a work setting, and limited social skills.

Dr. Tarver examined Swift once at the behest of the Commissioner. Social security regulations require an ALJ evaluating medical opinion evidence to consider a variety of factors, including the examining and treatment relationships, the specialization of the person giving the opinion, and how well the record supports the opinion in question. *See* 20 C.F.R. § 404.1527(d)(1)-(6). Because Dr. Tarver saw Swift on that single occasion, Tarver is an examining physician, rather than treating, and his opinion is not entitled to great weight. *Crawford v. Comm'r of Soc. Sec.*, 363 F. 3d 1155,1160 (11th Cir. 2004); *compare Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004) (treating physician's opinion is entitled to substantial or considerable weight unless good cause is shown to the contrary.). The difference between the weight the ALJ gives the opinion of an examining physician and the treating

physician is the latter's longitudinal perspective of the claimant's health. 20 C.F.R. § 404.1527(d)(2)(i). Regardless, an ALJ may reject the opinion of a treating physician or examining physician when the medical opinion is contrary to the evidence. *Phillips*, 357 F.3d at 1240.

The ALJ had contradictory evidence to reject the opinion from Dr. Tarver. Dr. Tarver found Swift had marked restrictions in interacting with supervisors and changes in a work setting plus limited social skills. The ALJ had contrary evidence from East Central Mental Health ("ECMH"). ECMH records reveal Swift has a Global Assessment of Function ("GAF") score of 99 which indicates moderate symptoms (R. 22, 304). The ECMH mental status evaluation reveals Swift has normal orientation, appropriate thought content, average intellectual functioning, and appropriate affect. These findings essentially place Swift within a normal results range in most categories. (R.310). ECMH group therapy records are also contrary to the findings of Dr. Tarver. The records show Swift was an asset to the group, led discussions, responded appropriately to other group members in a spontaneous manner, and had a normal afffect. (R.314-330).

Indeed, the ALJ had ample reasons to reject the assessment from Dr. Tarver as inconsistent with the medical record as a whole and inconsistent with her own records. *See Lewis v. Callahan,* 125 F. 3d 1436, 1440 (11th Cir. 1997). Dr. Tarver found Swift had marked limitations, which is inconsistent with her placement of Swift's GAF score at 70. A GAF score of 70 is appropriate for a person with only mild symptoms who is generally functioning pretty well and has some meaningful relationships. (R.22, 258).

The record contained substantial evidence to support the ALJ's decision to discount Dr. Tarver's opinion and to conclude Swift is not disabled. The court may not decide the facts anew, reweigh the evidence or sustitute its judgment for that of the Commissioner. *Winschel v.*

*Comm. of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011), quoting *Bloodsworth v. Heckler*, 703 F. 2d 1233, 1239 (11th Cir. 1983). The ALJ's decision to discount Dr. Tarver's opinion does not constitute reversible error.

### V.  CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law. It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.**

A separate judgment is entered herewith.

DONE this 14th day of March, 2011.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE